IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| RODERICK DAVID EKMARK | § | |
| --- | --- | --- |
| Plaintiff | § | |
| v. | § | No. SA-11-CA-465 |
| DR. KENNETH MATTHEWS and DR. LOIS BREADY | § | |
| Defendants | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Robert David Ekmark M.D. filed this civil action for damages and other relief, alleging that Defendants Kenneth Matthews M.D. and Lois Bready M.D. had deprived him of rights guaranteed by the Fourteenth Amendment to the Constitution of the United States. Jurisdiction in this Court is asserted under 42 U.S.C. § 1983. All parties have filed motions for summary judgment.

The following facts are established by the summary judgment evidence: Plaintiff Ekmark received an M.D. degree from the University of Texas Medical Branch, Galveston, Texas, in 2005. He applied for, and was accepted into, a residence program in psychiatry at the University of Texas Health Science Center ("UTHSC"), another state-sponsored medical school located in San Antonio, Texas. The four-year residence program began July 1, 2005, and ended June 30, 2009. At all times relevant to this case, Defendant Lois Bready M.D. was the Senior Dean for Graduate Medical Education at UTHSC, and Defendant Kenneth Matthews M.D. was the

Program Director for the Psychiatric Residence Program.

Along with his residence, Dr. Ekmark received a stipend which began at the level of $37,500 annually, and increased gradually thereafter. However, the stipend and associated fringe benefits were furnished by University Hospital, a facility operated by the Bexar County Hospital District. It was a requirement of the residence program that Dr. Ekmark perform clinical duties at University Hospital and at other facilities operated by the South Texas Veterans Health Care System, an arm of the United States Department of Veterans Affairs.

In September 2008, Craig Klugman, a PhD psychologist, was an employee of UTHSC. He was also a personal friend of Plaintiff Ekmark. On or about September 19, 2008, Klugman advised Dr. Bready that Plaintiff Ekmark had visited him at his home and confessed to having a sexual relationship with a female patient whom he had seen and treated at the VA Clinic. At the time of this incident, Dr. Ekmark had commenced his fourth year in the psychiatric residence program.

Upon receiving this information from Dr. Klugman, Dr. Bready conferred with Dr. Matthews, with other members of the administration, and with legal counsel. They decided to suspend Dr. Ekmark from performing clinical duties until an investigation could be conducted. Dr. Ekmark was informed of this decision and the reasons for it at a meeting on September 22, 2008. At that

meeting, which may have lasted as long as one hour, Dr. Ekmark was afforded the opportunity to tell his version of the story, which differed from Dr. Klugman's version in a number of respects. A second meeting was scheduled for September 29, 2008. Dr. Ekmark brought his own attorney to that meeting. He was questioned about the matters reported by Dr. Klugman, and again denied having had an inappropriate sexual relationship with a patient. After that meeting, UTHSC notified the Texas Medical Board that Dr. Ekmark's clinical duties had been suspended pending an investigation. In response, the Texas Medical Board inactivated the Plaintiff's physician-in-training permit. The VA was also notified of the allegations, and it convened an Administrative Investigation Board. The matter was placed on hold by UTHSC pending the results of that investigation.

On November 26, 2008, the investigation board issued a written report. Applying a "preponderance of the evidence" standard, the board found it more likely than not that Dr. Ekmark had engaged in an inappropriate sexual relationship with a specific patient whom he had seen in a VA facility. The board also pointed out that sexual activity between a psychiatrist and a current or former patient is "grossly unethical," and is considered a form of "patient abuse." After reviewing the report, Dr. Richard Bauer, the Chief of Staff of the Veterans Hospital, notified Dr. Bready that Dr. Ekmark's VA resident status was revoked, and that he was

3

prohibited from seeing VA patients or accessing VA computers. Dr. Bready received this letter from Dr. Bauer on December 18, 2008. Within a few days thereafter, Dr. Bready received another letter from an attorney, William Davidson, who stated that he represented Dr. Ekmark, and that he would be appealing the decision of the VA to revoke his client's VA privileges. Based on the representation that there would be an appeal, Dr. Ekmark was not terminated from the residence program, but his clinical suspension was continued pending the resolution of his appeal. He was assigned to "non-clinical research duties."

In February 2009, Dr. Bready received correspondence from another attorney, Ace Pickens, stating that he represented Dr. Ekmark, and inquiring as to his status. At that point, Dr. Bready and Dr. Matthews decided to refer this inquiry and all further inquiries to UTHSC's legal counsel, Jack Park. Thereafter, it appears that negotiations were conducted primarily, if not exclusively, between counsel representing the Plaintiff and legal counsel for UTHSC. On one or more occasions, Plaintiff's counsel requested a formal grievance hearing, but no such hearing occurred. There is also no evidence that the Plaintiff ever initiated a formal appeal of the VA's decision to terminate his clinical privileges.

Notwithstanding the suspension of his clinical duties, Dr. Ekmark was allowed to finish the fourth year of his residence,

which ended June 30, 2009. He continued to receive his full pay and benefits until that date.

Stripped of its frills, it is the Plaintiff's claim in this case that he had a constitutionally protected property interest in his status as a participant in the psychiatric residence program, and that the Defendants, Dr. Bready and Dr. Matthews,[1] deprived him of that protected property right without due process of law.[2] The legal questions presented by the motions for summary judgment are (1) whether Dr. Ekmark had a property interest in his continued status as a resident; (2) what process was due before he could be deprived of any such protected property interest; and (3) whether Dr. Ekmark was accorded the process due. **Davis v. Mann**, 882 F.2d 967 (5th Cir. 1989). The Plaintiff cannot claim that he was deprived of a property interest in continued employment; the record reflects that he was paid his full salary and benefits through June

---

[1] The Plaintiff originally named The University of Texas Health Science Center – San Antonio as an additional Defendant. However, UTHSC is an arm of the State of Texas, and the Eleventh Amendment deprives this Court of jurisdiction to entertain a claim against the State of Texas. Accordingly, Plaintiff's first amended complaint seeks relief only as to Defendants Bready and Matthews.

[2] Although the first amended complaint does mention such terms as "liberty" and "substantive due process" in passing, the Plaintiff's first amended complaint and subsequent pleadings make it clear that his only claim is that he was deprived of a "vested property right" without due process of law. **See, e.g.**, First Amended Complaint (Docket No. 13), pp. 18-20; Plaintiff's Motion for Summary Judgment (Docket No. 29), p. 6; and Plaintiff's Response to Defendant's Motion for Summary Judgment (Docket No. 34), pp. 2-4.

30, 2009, the date his contract expired. The proper question, then, is whether his continued status as a resident, *qua* resident, is a constitutionally protected property interest. Our Court of Appeals has held that there is no protected property interest in the experience and instruction which a medical resident anticipates receiving in an ongoing residence program. **Shaboon v. Duncan**, 252 F.3d 722, 732 (5th Cir. 2001); **Davis v. Mann**, 882 F.2d at 974. However, assuming *arguendo* that Dr. Ekmark possessed a protected property interest in his ongoing residence, he would not be entitled to the same level of procedural protection under the due process clause of the Fourteenth Amendment as the typical public employee engaged in a line of work outside of academia. **Board of Curators of the University of Missouri v. Horowitz**, 435 U.S. 78 (1978); **Davis v. Mann**, 882 F.2d at 974. In the instant case, Dr. Ekmark was accused of serious violations of medical ethics which jeopardized his status as a resident. The procedural safeguards to which he was entitled under the Fourteenth Amendment were that he be given meaningful notice of the allegations, and an opportunity to respond to them. **See Matthews v. Eldridge**, 424 U.S. 319 (1976); **Davis v. Mann**, 882 F.2d at 975. The record reflects that Dr. Ekmark was given clear notice of the claimed ethical violation, and was afforded more than one opportunity to respond. Dr. Klugman reported the matter to Dr. Bready on September 19, 2008. On September 22, 2008, Dr. Ekmark met with Dr. Matthews and several

other administrators, at which time he was informed of the alleged breach of ethics and given the opportunity to respond. One week later, on September 29, 2008, the administrators met again with Dr. Ekmark, who this time brought his lawyer with him. At this meeting, he was afforded a second opportunity to respond. He denied having had an inappropriate sexual relationship with a patient, and insisted that Dr. Klugman's testimony was false.

Instead of conducting its own investigation of the matter, the UTHSC decided to defer to the Department of Veterans Affairs. The VA appointed an Administrative Investigation Board, which did conduct an investigation in October and November 2008. Dr. Ekmark, who again was represented by counsel, was afforded the opportunity to appear and testify.

While acknowledging that he was afforded several opportunities to defend himself against the claim of patient abuse, Dr. Ekmark contends that he was entitled to a formal grievance hearing under the GME Policy Manual, and that the Defendants' failure to afford him such a hearing was a violation of due process. However, it is well settled that the due process guaranteed by the Constitution is not measured by a medical school's own internal policies. **See Levitt v. The University of Texas at El Paso**, 759 F.2d 1224 (5th Cir. 1985). The issue before the Court is whether the due process clause of the Fourteenth Amendment entitles Dr. Ekmark to a formal grievance hearing. Based on the summary judgment evidence and the

7

case law in this circuit, the Court finds that it did not.

IT IS THEREFORE ORDERED that the Plaintiff's motion for summary judgment be, and it is hereby, DENIED.

IT IS FURTHER ORDERED that the Defendants' motion for summary judgment be, and it is hereby, GRANTED.

IT IS FURTHER ORDERED that Judgment be, and it is hereby, ENTERED in favor of the Defendants and that the Plaintiff taken nothing by his suit.

SIGNED AND ENTERED this 13th day of July, 2012.

HARRY LEE HUDSPETH
SENIOR UNITED STATES DISTRICT JUDGE